# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CARLOS O. RODRIGUEZ,

       **Plaintiff,**

vs.                                                                    No. CIV 02-1374 RB/RLP

JOHN ASHCROFT, ATTORNEY GENERAL,
DEPARTMENT OF JUSTICE,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss or for Summary Judgment (Doc. 18), filed on November 7, 2003. Jurisdiction arises under 28 U.S.C.§1331. Having reviewed the submissions of the parties and the relevant law, I find that the motion should be granted.

## I.     Background.

Plaintiff (Rodriguez) alleges that he was subjected to employment discrimination on the basis of national origin, age, and disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2003-17, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621-634, and the Rehabilitation Act of 1973, as amended, 29 U.S.C.§ 791.

Defendant argues that Rodriguez failed to exhaust administrative remedies. Rodriguez maintains that the administrative deadlines should be equitably tolled because he was physically and mentally incapacitated. I find that Rodriguez's theory of equitable tolling to be unpersuasive.

Rodriguez, a male Hispanic, began working as a Deputy United States Marshal in 1983. (Compl. ¶ 10.) In October 1993, when Rodriguez was 44 years old, Scott Demro was appointed

Chief Deputy and became Rodriguez's supervisor.  (Compl. ¶ 11.)  Rodriguez alleges that Demro subjected him to a hostile work environment consisting of daily racist remarks, disparaging comments about his age, and intimidation.  (Compl. ¶¶ 11-21.)  Demro instructed Rodriguez to discipline or "get rid of" Hispanic employees and harassed employees supervised by Rodriguez.  (Compl. ¶ 21.)

From 1993 to March 24, 1995, Rodriguez experienced a constant build up of stress, which caused him to exercise excessively.  (Compl. ¶ 22.)  The excessive exercise caused shoulder injuries, a traumatic stress disorder, and severe depression.  (Compl. ¶ 22.)  The shoulder injuries affected Rodriguez's upper back, spine, and neck.  (Compl. ¶ 25.)  When Rodriguez informed Demro of his shoulder injuries and asked to file a workers' compensation claim, Demro cursed Rodriguez and threatened to reject the claim.  (Compl. ¶ 26.)  Rodriguez later spoke to John Sanchez, the United States Marshal, who told him to file the workers' compensation claim.  (Compl. ¶ 27.)  Rodriguez filed a workers' compensation claim for his shoulder injuries on March 24, 1995.  (Compl. ¶ 25; Pl. Ex. B.)  Demro continued to harass Rodriguez.  (Compl. ¶ 28.)

On May 19, 1998, Rodriguez reported to his supervisors that he had been diagnosed with posttraumatic stress disorder.  (Def. Ex. E.)  On June 1, 1998, Demro retired.  (Def. Ex. A.)  On July 9, 1998, Rodriguez began psychological treatment with Dr. Laura A. Gordon.  (Def. Ex. E.)  Dr. Gordon diagnosed Rodriguez with posttraumatic stress disorder.  (Pl. Ex. D.)

Rodriguez stopped working on August 5, 1998, and underwent surgery on his right shoulder on August 6, 1998.  (Pl. Ex. B.)  After the surgery, Rodriguez spent most of his time at home in bed under heavy medication.  (*Id.*)  On January 21, 1999, Rodriguez underwent surgery on his left shoulder.  (Compl. ¶ 30.)  Rodriguez was on sick leave from August 8, 1998, until May 27, 1999.  (Compl. ¶ 29.)  Rodriguez has been receiving workers' compensation disability pay for his shoulder

injuries since May 27, 1999.  (Pl. Ex. B.)

On September 16, 1999, Rodriguez filed a Notice of Recurrence of Disability and Claim for Continuation of Pay/Compensation.  (Def. Ex. C.)  Rodriguez claimed that he had sustained posttraumatic stress disorder in the performance of his duties.  (*Id*.)  On November 16, 2000, the Office of Workers' Compensation Programs denied the posttraumatic stress disorder workers' compensation claim.  (Def. Ex. F.)  Rodriguez states that he was able to pursue his workers' compensation claim only with the assistance of other employees.  (Pl. Ex. B.)

On October 13, 2000, Rodriguez began psychiatric treatment with Dr. Daniel J. Brant.  (Pl. Ex. C.)  Rodriguez's chief complaint was that he was over medicated.  (*Id*.)  Dr. Brant diagnosed posttraumatic stress disorder, modified Rodriguez's medications, and recommended that Dr. Gordon intensify her treatment to focus on a structured process of anxiety control.  (*Id*.)  Dr. Brant opined that "it was consistent with posttraumatic stress disorder" that Rodriguez was unable to file an EEOC complaint until he had the support of an attorney in January 2001.  (*Id*.)

In an affidavit, Dr. Gordon noted that Rodriguez had been exposed to a series of traumatic situations inflicted by Demro and that Rodriguez experienced distressing dreams, intense psychological distress, and physiological reactivity at internal or external cues that resembled the trauma. (Pl. Ex. D.) Dr. Gordon recounted that Rodriguez avoided thoughts, feelings, activities, and people associated with the trauma.  (*Id*.)  She opined that Rodriguez began to suffer from posttraumatic stress disorder from six to twenty-four months after Demro became his supervisor. (*Id*.)  She agreed with Rodriguez's contention that Rodriguez would not have been able to file his EEOC complaint until he had the support of his attorney in January 2001.  (*Id*.)

Rodriguez initially requested EEOC counseling on January 18, 2001. (Def. Ex. G.) Rodriguez

avers that he was unable to file his discrimination claim until January 2001 because he was unaware that he needed to contact a counselor, he had not seen an attorney, he was under heavy medication, he did not realize his rights, and that thoughts of the incidents caused him severe physical and emotional distress.  (Pl. Ex. B.)  On April 8, 2002, the EEOC issued a decision denying Rodriguez's discrimination claim on the ground that Rodriguez had failed to timely contact a counselor.  (Def. Ex. H.)  Rodriguez's request for reconsideration was denied on July 30, 2002. (Def. Ex. I.)  This action followed on October 21, 2002.  (Doc. 1.)

Rodriguez asserts a Title VII claim for racial discrimination (Count I); an ADEA age discrimination claim (Count II); a Rehabilitation Act disability discrimination claim (Count III); and a Title VII hostile work environment claim (Count IV).

## II.    Standard.

When matters outside the pleadings are presented and considered by the court, the motion must be treated as a motion for summary judgment.  *See* FED. R. CIV. P. 12(b).  Before the motion is converted to a summary judgment motion, all parties must be given a reasonable opportunity to present all material made pertinent by Rule 56.  *Id.*; *see also* FED. R. CIV. P. 56.  Plaintiff presented his response under the Rule 56 standard with supporting materials.  The parties had a reasonable opportunity to present all pertinent material.  Under these circumstances, the motion should be treated as a motion for summary judgment.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)).  When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party.  *Id*.

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the non-moving party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter.  *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof.  *See Muñoz,* 221 F.3d at 1164.  It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the

motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only rely on admissible evidence in the summary judgment analysis. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1 (10th Cir. 2000).

### III.   Discussion.

A.   **Whether Defendants are entitled to summary judgment because Rodriguez failed to exhaust administrative remedies.**

Both Title VII and the Rehabilitation Act require a federal employee to exhaust his administrative remedies before filing suit. *See* 42 U.S.C. § 2000e-16(c) (Title VII); *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997) (Rehabilitation Act). In order to exhaust administrative remedies, a federal employee who believes that he has been discriminated against on the basis of race, age or handicap "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . ." 29 C.F.R. § 1614.105(a)(1). The employee may appeal the final determination of the agency to the federal district court within ninety days of the receipt of the final action, or 180 days after the filing of the complaint if no action is taken by the agency. 29 C.F.R. § 1614.407(a)-(b).

The ADEA provides a federal employee two alternative routes for pursuing an age discrimination claim. *See* 29 U.S.C § 633a(c)-(d); *Jones v. Runyon*, 32 F.3d 1454, 1455 (10th Cir.

1994).  An employee may either follow the administrative process for Title VII claims, or he may bring the action directly to federal district court in the first instance, so long as the employee gives the EEOC notice of intent to sue within 180 days of the alleged discriminatory act and then waits thirty days before filing suit.  29 U.S.C. § 633a(c)-(d); *Stevens v. Department of Treasury*, 500 U.S. 1, 7 (1991); *Jones v. Runyon*, 32 F.3d at 1456.

A claimant must file a charge of discrimination within the appropriate limitations period as to each such discrete act of discrimination that occurred.  *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  Thus, Rodriguez had forty-five days from an alleged discriminatory act to contact a counselor in order to exhaust administrative remedies for his claims.  In order to follow the alternative route for his ADEA claim, Rodriguez had 180 days from an alleged discriminatory act to notify the EEOC of his intent to sue.

Demro alone was the source of the alleged discriminatory acts.  Because Demro retired on June 1, 1998, a discriminatory act could have occurred no later than that date.  At the latest, the deadline for contacting an EEOC counselor expired on July 16, 1998, and the deadline for notifying the EEOC of intent to sue on the ADEA claim expired on November 29, 1998.  Rodriguez initially requested EEOC counseling on January 18, 2001, over two years after the limitations expired.  (Def. Ex. G.)  While Rodriguez acknowledges that he failed to comply with the time limitations, he contends that the limitations should be equitably tolled because of his lack of knowledge, fragile mental condition, and medicated state.

Failure to timely file an administrative charge is not a jurisdictional bar, but is subject to waiver, estoppel, and equitable tolling.  *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).  However,

equitable exceptions to the time limitations are narrowly construed. *Harms v. I.R.S.*, 321 F.3d 1001, 1006 (10th Cir. 2003); *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996). While the Tenth Circuit has never held that an individual's mental incapacity entitles him to equitable tolling, it has noted that courts that recognize equitable tolling for mental incapacity have limited its application to "exceptional circumstances." *Harms*, 321 F.3d at 1006 (citing *Biester*, 77 F.3d at 1268). Examples of exceptional circumstances include a showing that the plaintiff was adjudged incompetent or was institutionalized. *Biester*, 77 F.3d at 1268. The plaintiff has the burden of establishing his mental incompetency. *Harms*, 321 F.3d at 1006.

Rodriguez has not alleged or proved any exceptional circumstances. While it is true that Dr. Gordon diagnosed Rodriguez with posttraumatic stress disorder on July 29, 1998, she did not state at that time that he was unable to work or attend to his affairs. (Pl. Ex. D.) Indeed, she opined that he had been suffering from posttraumatic stress disorder since 1994 or 1995. (*Id*.) Rodriguez filed a successful workers' compensation claim in March 1995. (Pl. Ex. B.) Rodriguez worked until August 5, 1998; three weeks after the administrative deadline expired. (*Id*.) The record indicates that Rodriguez went on sick leave to have shoulder surgery, and not because he was mentally incapacitated. (*Id*.) In September 1999, Rodriguez was able to submit documents relevant to his workers' compensation claim. (Def. Ex. C.) Dr. Brant did not start treating Rodriguez until October 2000, almost two years after the last deadline expired. (Pl. Ex. C.) The undisputed material facts establish that Rodriguez has failed to meet his burden of showing mental incapacity. The time limitations for exhaustion of administrative remedies should not be equitably tolled.

Rodriguez objects to portions of Defendant's Exhibits B and D on the ground that they are inadmissible hearsay. The objectionable portions concern the date that Rodriguez retained counsel.

8

Defendant asserts that Rodriguez was represented by an attorney as early as July 16, 1999.  (Def. Ex. A.)  Rodriguez avers that he was not represented by counsel until January 2001.  (Pl. Ex. B.)  This factual dispute is immaterial because the deadlines expired in 1998 and Rodriguez has failed to establish that he was mentally incapacitated during the relevant time period.

**IV.     Conclusion.**

Rodriguez's objections should be denied as moot.  Defendant's motion for summary judgment should be granted.

**WHEREFORE,**

**IT IS ORDERED** that  Defendant's Motion to Dismiss or for Summary Judgment (Doc. 18), filed on November 7, 2003, is **GRANTED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**